CLARK *v.* FARNSWORTH & CHAMBERS CO., INC.

5-206                                          262 S. W. 2d 458

Opinion delivered December 7, 1953.

*Talley & Owen, Max Howell, Norman D. Price* and *Gene Worsham,* for appellant.

*Rose, Meek, House, Barron & Nash,* for appellee.

ROBINSON, J. Appellee Farnsworth & Chambers Co., Inc., hereinafter referred to as Farnsworth, was the contractor in the construction of what is known as the Granite Mountain Housing Project in Little Rock. The contract called for the construction of 100 dwelling units and one administration building. Farnsworth estimated the labor on masonry involved would cost $375,319 but this figure did not include the cost of Social Security, State Unemployment, Federal Excise Tax, Workmen's Compensation, and Public Liability, which amounted to a little less than 7% of the payroll. Appellant H. L. Clark is experienced in the construction of masonry work; he and Farnsworth have contracted in regard to this kind of work on several occasions at various places throughout the southwest.

They entered into an agreement on the Granite Mountain project whereby for the consideration of $140 per week plus $25 per week as an expense allowance, Clark would supervise the masonry work; and it was further agreed: "All expenses connected with the above and all payroll insurance and taxes will be totaled at the end of the job and H. L. Clark and Farnsworth & Chambers will split equally all profit saved from the $360,000 which was the top figure mentioned." In other words, if Clark could get the masonry done for less than $360,000 for labor, he and Farnsworth would split equally the amount saved below that figure.

When the job was partially completed, Farnsworth discharged Clark claiming that his supervision of the work was entirely unsatisfactory. Clark filed this suit contending that he was wrongfully discharged and that at the time of such discharge 54.9% of the work had been

completed at a cost of $148,000 which he alleged was about $56,000 less than 54.9% of $360,000. Clark further alleged that if he had been allowed to complete the work, he would have saved an additional $44,000 which added to the $56,000 he claimed he had already saved, would have totalled $100,000 to be split equally between him and Farnsworth.

Upon the trial of the issues, the Chancellor held, first, that Clark was not wrongfully discharged; and second, that even if 54.9% of the work had been completed, the cost thereof had not been less than 54.9% of $360,000 when all items to be charged properly against the work were taken into consideration. There is no contention by appellant that he would be entitled to any amount saved subsequent to his discharge, provided Farnsworth was justified in letting him go. Incidentally the record shows that the completed project cost $398,-675.46 for masonry labor.

To sustain his contention that he was wrongfully discharged, appellant in addition to his own testimony relies on the evidence given by John A. Woodson to the effect that the work was up to average, and Ray Inman, one of the bricklayers, who testified that no complaint was made as to his work on the inside partitions; also the testimony of Marvin Ivy that he never heard anyone complain about the cleaning of the building; the testimony of Ted Brewer who said that the building was cleaned properly; and W. R. Inman whose testimony indicated that if the masonry was put up in an unworkmanlike manner it was due to urging on the part of Mr. Langley, superintendent for Farnsworth, that the employees put out more quantity of work of less quality.

On the other hand, it was shown that Clark did not cooperate in helping to schedule the job; that it was of the utmost importance to Farnsworth to complete each unit as rapidly as possible; and regardless of Clark's being urged to cooperate in this respect he had practically all of his crews working on the outside walls with only one crew doing the inside work, and as a result when 69 or 70 of the units had been completed so far as the

outside walls were concerned, only 13 had been completed on the inside. This caused the contractor to run behind schedule and hence to be late in finishing the job.

It was only after repeated urging that Clark was prevailed upon to see that the anchors for partitions and roofs were installed properly. The architects protested: ''The attention of the foreman in the field has been called several times to the fact that they are leaving out anchors for the partitions and anchors for the roof; this is an item that must be corrected without our inspector having to point out every one to the foreman.'' And at a later date the architects made a formal written complaint: ''Reference is made to our memorandum of 4/21/51 regarding wall anchors. The brick masons are still omitting the partition anchors and wall ties except when someone stands right at their elbow and reminds them. Some method will have to be devised to get these items in as specified.'' When these anchors were not installed in the first instance, it was necessary to knock a hole in the wall and then restore the damaged masonry.

The superintendent of the entire job complained that Clark did not coordinate his work to the extent of keeping supplies ahead of the workers; masons drawing $3.25 per hour would be idle awaiting the necessary brick, mortar, tile, and scaffolding. The quantity of mortar needed was not correctly estimated, and as a result unused mortar was left over at night and ruined. A window opening was omitted.

From the architect's diary: ''Rooms, Building A-412, one brick layer at $3.25 per hour and two helpers working six days trying to straighten up brick walls''; and then another instance: ''Rooms, Building A-412, tore out tile on inside and replaced; reset door and window frames''; and later: ''Building A-450, two top layers of tile and exterior walls taken out and relaid. One window was 1″ too low and tile was laid crooked in wall.''

Moreover Mr. Woodson, an inspector, wrote: ''Tile and exterior wall must be leveled plumb and true to a line; all headjoints of equal thickness; also headjoints as

near as possible; having to cut out and replace too many tile to obtain a passable job. Every tile that is taken out and replaced weakens the wall." Mr. Hawn, the architect's representative, also criticized the work, referring to untrue lines, a wall out of plumb, and warped brick work, and that when he made a suggestion, Clark replied that he would "do the work like he wanted to and not like I say to do it."

There was an excessive droppage of mortar on walls, grade beams, and concrete floors. Also the walls were not properly cleaned. Mr. Lynch, representing the architect, said the walls were "smeared with lime mortar. . . . Apparently no effort had been made to wipe the face of the brick down. More than one cleaning operation was necessary." In trying to scrape the excessive droppage of mortar from the floors, picks and shovels and special scrapers were used, and on some floors an electric grinder had to be used; and in removing it, the floors were chipped and had to be patched. It was a very tedious and expensive operation.

From the record we cannot say that the Chancellor's finding that Farnsworth was justified in discharging Clark is contrary to a preponderance of the evidence.

Appellant's contention that he had completed 54.9% of the work before his dismissal for less than half of the $360,000 is not supported by the evidence. Clark testified that the cost of the masonry up to the time of his discharge was $149,091.53. However, the testimony produced on this point is not satisfactory. He says he arrived at this total by a memorandum of the costs which he kept in his pocket; but he did not produce this memorandum at the trial. To prove the payroll figures he relied on a summary prepared by the clerk of the Housing 'Authority. It is obvious that this summary is not complete; it does not take into consideration all of the items properly chargeable against the job, for instance the common labor. The Chancellor made a finding that the entire labor cost was $172,515.18, to which should be added 6.712% as Social Security, State Unemployment,

etc. This makes a total of $184,494.40; and $28,409.14 should be added as the cost of cleaning the brick which was an item to be charged. Thus it will be seen that the total amount properly charged to the construction of the masonry is in excess of 54.9% of the $360,000.

It might be added that Farnsworth produced in court all the records pertaining to the cost of the masonry, and before the Chancellor made a finding in the matter, appellant was given an opportunity to audit the records to determine if Farnsworth's version of the cost was correct; appellant did not take advantage of this offer.

The Chancellor's findings are supported by a preponderance of the evidence. Hence the decree is correct and is therefore affirmed.

Mr. Justice GEORGE ROSE SMITH not participating.